GEORGE M. SHERMAN *v.* GEORGE ELDER, WILLIAM R. PAINTER and CHARLES F. LINEBACK.

Where a husband has exclusive control of the separate estate of his wife, and of its accumulations, upon the faith of which it is just to infer he obtained credit, and which he possesses without restriction, exercising acts of ownership, and presenting to the world all the semblance of title with the permission and by the agreement of his wife, the property is liable to his creditors for his debts.

The law does not tolerate a contract between husband and wife, by which he becomes her servant, and she receives and retains the advantages and accumulations of his labors.

The acts of 1848 and 1849 confer upon a married woman the right to hold her separate estate free from her husband's debts and power to sell. But they do not relieve her personal estate from the doctrine of the common law when she invests her husband with full power to traffic with it, nor do they give her the right to traffic therewith, and to assume the liabilities and obligations of commercial enterprise.

APPEAL by plaintiff from a judgment entered on the report of a referee. The action was brought by the plaintiff, as assignee of Lucy Sherwood, to recover damages for the taking of personal property, claimed to be a part of her separate estate, and taken on execution against her husband Daniel Sherwood. The cause was tried before a referee, who reported for the plaintiff for a small part of his claim. Judgment was entered therein, but was reversed on appeal by the defendants, and a new trial was ordered, upon the ground that the complaint was defective, in neither alleging that the plaintiff had made a demand subsequent to the assignment to him, nor that Lucy Sherwood had assigned her claim for damages against the defendants. See report of the case, *ante,* page 178. The plaintiff then amended

his complaint, alleging that Lucy Sherwood had assigned her claim for damages as well as the property itself to him. Upon the second trial, the referee dismissed the complaint. The plaintiff appealed. The facts are stated in the opinion of the court.

*Albert Mathews,* for the appellant.

*R. M. Harrington,* for the respondents.

BRADY, J.—The appellant presented, on the argument, a variety of questions, some of which, for the purposes of this appeal, it is unnecessary to consider. Upon the main facts in the case there cannot well be any dispute, and the findings of the referee are not in conflict with the evidence disclosed on the trial. The facts, substantially, are, that Mrs. Sherwood was engaged in the grocery business at the time of her marriage with Daniel Sherwood, which took place on the 12th of January, 1850. That at the time of the marriage Daniel was not engaged in any business; and the first business in which he engaged after that event was attending the grocery store of his wife. By the arrangement made between himself and wife, he was to carry on the business and have enough out of it to live on for his services. He attended the store and bought all the goods, and bought for the store the goods for the amount of which he confessed a judgment to Elder & Painter. He was in the habit of giving notes for purchases made for the store, which were signed in the name of "L. Sherwood." The business was entrusted in his hands without any special instructions or directions. He consulted his wife in some instances, and in some he did not, in giving notes, but did not in the payment of them. He never told Elder & Painter he was doing business in his wife's name, but was under the impression they so understood it, although they told him that they did not so understand it. He paid the rent of the store, and took a receipt in his own name. The purchases made by him, and the improvements made upon the premises occupied by him and his wife, were so made out of the proceeds of the business,

which he conducted in the manner stated. There is no proof that after the marriage Lucy Sherwood gave any personal attention to the business, while the facts just detailed show that it was exclusively managed by her husband Daniel. Prior to the acts of 1848 and 1849, the personal property of the wife *dum sola* became that of the husband the instant it passed into his possession, and was subject to the payment of his debts. Those acts destroyed that rule of the common law, by providing that it should neither be subject to his disposal nor his debts, but should continue her sole and separate property, as if she were a single female; but whether it conferred upon her the right to use it in all respects as if she were a *feme sole*, has not yet been decided. If she can, then, in reference to her separate estate, she has a separate legal identity, and, as an incident, the right to make contracts in relation thereto, wholly untrammeled by her marital relation. It is not necessary, however, in this action, to determine that question. Whatever she might have power to do with a stranger, when her dealings are with her husband the law will look upon them with distrust if the effect will tend to render the use of her separate estate a means of fraud.

In this case, it appears that the husband had exclusive control of the separate estate and its accumulation, upon the faith of which it is just to infer he obtained credit. He possessed it without restriction, exercising acts of ownership, and presenting to the world all the semblance of title. This he did, not only with the permission of his wife, but by agreement with her. If she had labored with him, there is little doubt that the result of that labor, if it could be separated from the bulk of her estate, would be subject to the husband's debts; and I see no reason why the proceeds of the husband's labor should not be exposed to a similar rule. I am not aware that the law has yet tolerated a contract between husband and wife, by which he may become her servant; and I suppose it to be quite unquestionable, that for services so rendered he could not recover, and that for such a contract, broken by the husband, she could not recover damages from him. Nor do I believe that the legislature ever intended

that the wife should exercise any higher prerogative, in reference to her separate personal estate, than to hold it as if she were a *feme sole*, free from her husband's debts, and power to sell. They did not intend to relieve her personal estate from the doctrine of the common law when she invested her husband with full power to traffic with it even in her name. The statutes referred to are in derogation of the common law, and should not be enlarged by construction, especially in cases of doubtful expediency. They do not grant the right to a married woman to traffic with her personal estate, assuming and contracting all the liabilities and obligations of commercial enterprise. That power, if it is to exist, should be established by express enactment, as well as the right to employ the husband as agent to conduct the business for her, and thus advise the community that her separate estate is held aloof from the creditors of her husband, although he has, ostensibly, exclusive charge thereof, and of the business predicated thereon. At present the law does not authorize such transactions, and Mrs. Sherwood must be regarded as having devoted or dedicated to her husband the stock of groceries which she had when he took charge of her business, and the accumulations or changes thereof. And this applies to the articles mentioned in the finding of the referee, which were valued by him at sixty dollars; and which were portions of the old stock, or things bought during the first marriage of Mrs. Sherwood. The plaintiff, therefore, acquired nothing by the assignment.

The judgment of the referee was right, and should be affirmed. Judgment affirmed.